Jason D. Cassady (Texas Bar #24045625)
Alexis F. Mosser (Texas Bar #24070675)
**CALDWELL CASSADY & CURRY**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
jcassady@caldwellcc.com
amosser@caldwellcc.com

J. Mark Gibb (Utah Bar #5702)
Lyndon R. Bradshaw (Utah Bar #15097)
DURHAM JONES & PINEGAR, P.C.
111 S. Main Street, Suite 2400
P.O. Box 450
Salt Lake City, UT 84111
mgibb@djplaw.com
lbradshaw@djplaw.com

Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| nCAP LICENSING, LLC, nCAP TELECOMMUNICATIONS LLC, nCAP MEDICAL, LLC,<br>Plaintiffs,<br><br>vs.<br><br>APPLE INC.,<br>Defendant. | PLAINTIFFS nCAP's CROSS-MOTION FOR CLAIM CONSTRUCTION UNDER LOCAL PATENT RULE 4.2<br><br>Case No.: 2:17-cv-00905-RJS<br>District Judge: Robert J. Shelby<br>Magistrate Judge: Brooke C. Wells<br><br>JURY TRIAL DEMANDED |

---

**PLAINTIFFS nCAP's CROSS-MOTION FOR CLAIM CONSTRUCTION UNDER
LOCAL PATENT RULE 4.2**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  TECHNOLOGY TUTORIAL ............................................................................ 1

III. LEGAL PRINCIPLES RELATED TO CLAIM CONSTRUCTION ......................... 5

    A.  Patent Claims Are Generally Given Their Ordinary and Customary Meanings ........................................................................................... 6

    B.  There Are Only Two Reasons to Stray From the Ordinary and Customary Meaning of Claim Terms ............................................................... 6

    C.   Examples and Embodiments Should Not be Imported Into the Claims .............. 7

IV. ARGUMENT REGARDING CLAIM CONSTRUCTION ......................................... 8

    A.  The Claim Language Weighs Against Importing Defendants' Proposed Limitation ................................................................................ 9

    B.  The Specification Weighs Against Importing Defendants' Proposed Limitation ............................................................................ 10

    C.   The Prosecution History Does Not Justify Importing Defendant's Proposed Limitation ................................................................ 10

V.  LEGAL PRINCIPLES RELATED TO INDEFINTENESS ...................................... 12

VI. ARGUMENT REGARDING INDEFINITENESS ................................................... 14

    A.  "conductive particles dispersed in a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another" ......... 15

    B.   "Antenna Enhancer" .................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*
    725 F.3d 1315 (Fed. Cir. 2013) .................................................................. 8

*Accentra, Inc. v. Staples, Inc.*
    500 F. App'x 922 (Fed. Cir. 2013) ......................................................... 15

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*
    694 F.3d 1312 (Fed. Cir. 2012) ................................................................ 9

*ADC Telecommunications, Inc. v. Switchcraft, Inc.*
    No. CIV. 04-1590ADMJSM, 2005 WL 2206115 (D. Minn. Sept. 9, 2005) ........................... 15

*Alberta Telecomm. Research Centre v. AT&T Corp.*
    No. 09-3883, 2012 WL 3990540 (D. N.J. Sept. 10, 2012) ..................................... 17

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*
    309 F.3d 774 (Fed. Cir. 2002) ............................................................... 12

*Allergan, Inc. v. Teva Pharm. USA, Inc.*
    No. 2:15-CV-1455-WCB, 2016 WL 7210837 (E.D. Tex. Dec. 13, 2016) ........................... 17

*ART+COM Innovationpool GmbH v. Google Inc.*
    No. CV 14-217-RGA, 2015 WL 3979576 (D. Del. June 26, 2015) ............................... 15

*Avid Tech., Inc. v. Harmonic, Inc.*
    812 F.3d 1040 (Fed. Cir. 2016) ............................................................... 8

*Biosig Instruments, Inc. v. Nautilus, Inc.*
    783 F.3d 1374 (Fed. Cir. 2015) .............................................................. 13

*CCS Fitness, Inc. v. Brunswick Corp.*
    288 F.3d 1359 (Fed. Cir. 2002) ........................................................... 7, 10

*Chem. Separation Tech., Inc. v. United States*
    51 Fed. Cl. 771 (2002) ...................................................................... 15

*Comark Commc'ns, Inc. v. Harris Corp.*
    156 F.3d 1182 (Fed. Cir. 1998) ............................................................... 8

*Constant v. Advanced Micro-Devices, Inc.*
    848 F.2d 1560 (Fed. Cir. 1988) ............................................................... 8

*Cordis Corp. v. Boston Sci. Corp.*
  561 F.3d 1319 (Fed. Cir. 2009)................................................................. 7

*Datamize, LLC v. Plumtree Software, Inc.*
  417 F.3d 1342 (Fed. Cir. 2005)................................................................. 14

*DDR Holdings, LLC v. Hotels.com, L.P.*
  773 F.3d 1245 (Fed. Cir. 2014)................................................................. 14

*Enzo Biochem Inc. v. Applera Corp.*
  780 F.3d 1149 (Fed. Cir. 2015)............................................................. 6, 14

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*
  No. 8:10CV187, 2015 WL 12697086 (D. Neb. July 28, 2015).................. 15

*Exxon Research and Eng'g Co. v. U.S.*
  65 F.3d 1371 (Fed. Cir. 2001)................................................................. 17

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*
  423 F.3d 1343 (Fed. Cir. 2005)................................................................. 15

*GE Lighting Solutions, LLC v. AgiLight, Inc.*
  750 F.3d 1304 (Fed. Cir. 2014)................................................................. 7

*Golden Bridge Tech., Inc. v. Apple Inc.*
  758 F.3d 1362 (Fed. Cir. 2014)................................................................. 7

*H–WTech., L.C v. Overstock.com, Inc.*
  758 F.3d 1329 (Fed. Cir. 2014)................................................................. 12

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*
  676 F.3d 1063 (Fed. Cir. 2012)................................................................. 15

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*
  381 F.3d 1111 (Fed. Cir. 2004)................................................................. 6

*Intel Corp. v. VIA Techs., Inc.*
  319 F.3d 1357 (Fed. Cir. 2003)................................................................. 13

*Invitrogen Corp. v. Biocrest Mfg., L.P.*
  424 F.3d 1374 (Fed. Cir. 2005)........................................................... 13, 17

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*
  No. 1:12-CV-654, 2015 WL 11401855 (W.D. Mich. Apr. 28, 2015) ...... 17

*Medrad, Inc. v. MRI Devices Corp.*
    401 F.3d 1313 (Fed. Cir. 2005) ........................................................................... 11

*Merrill v. Yeomans*
    94 U.S. 568 (1876) ................................................................................................. 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*
    134 S.Ct. 2120 (2014) ........................................................................................... 13

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*
    806 F.2d 1565 (Fed. Cir. 1986) ........................................................................... 14

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 6, 7, 8, 9

*Sonix Tech. Co. v. Publications Int'l, Ltd.*
    844 F.3d 1370 (Fed. Cir. 2017) ........................................................................... 14

*Sumitomo Dainippon Pharma v. Emcure Pahraceut.*
    887 F.3d 1153 (Fed. Cir. 2018) ........................................................................ 6, 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................................ 6, 9

*Thorner v. Sony Computer Entm't Am. LLC*
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................................. 7

*Trivascular, Inc. v. Samuels*
    812 F.3d 1056 (Fed. Cir. 2016) ............................................................................. 8

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................... 7

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*
    778 F.3d 1365 (Fed. Cir. 2015) ........................................................................... 14

*Young v. Lumenis, Inc.*
    492 F.3d 1336 (Fed. Cir. 2007) ........................................................................... 15

**Statutes**

35 U.S.C. § 112 ....................................................................................................... 12

I.      INTRODUCTION

The parties present the Court with only one traditional claim construction dispute.  Apple had previously proposed two additional terms for dispute—"antenna" and "radiating antenna element"—but the parties have resolved those disputes without the need for a ruling from the Court.  With regard to the one remaining dispute, Apple argues that an additional limitation be read into claim 12 of the patent in suit.  nCap argues that claim 12 should be given its ordinary and customary meaning, without additional limitations.  Because Apple cannot justify departing from claim construction norms, its requested limitation should not be added.

Apple also contends that all of the claims of the patent in suit are indefinite because they include the phrases "adjacent to" and "enhancer."  These are common phrases understood by one of ordinary skill in the relevant art and the lay person alike.  In fact, other courts have previously held that these specific terms do not render claims indefinite.  Because these terms, as they are used in the claims at issue in view of the patent specification, provide one of ordinary skill in the art with reasonable certainly as to the scope of the patent claims, they do not render these claims invalid as indefinite.

II.     TECHNOLOGY TUTORIAL

U.S. Patent No. 9,088,071 (the "patent-in-suit" or "the '071 patent") describes antennas and antenna enhancers that employ conductive particle based material.  These types of antennas are particularly useful for today's modern consumer electronics because they allow small antenna components to perform more effectively than conventional antennas.

An antenna is a device that converts an electrical signal into electromagnetic radiation to transmit information through space, and that converts electromagnetic radiation into an electrical

1

signal.  '071 patent at 1:31-42.  A typical antenna includes a feed line to convey the electrical signal for transmission as electromagnetic radiation.  The feed line connects to one or more conductive elements.  The antenna may also contain additional conductive elements that act as reflectors to assist in transmitting the signal.

In a conventional antenna, the conductive elements are made of a solid conductive material such as copper or aluminum wires, loops, or patches, as shown in the examples below:



The inventors of the '071 patent discovered that at least some types of antennas can be improved by using a conductive particle based material.  This material consists of conductive particles (i.e., tiny copper, silver, or gold particles) suspended in a binder which may be non-conductive , or semi-conductive.  A microscopic image of this material is shown in Figure 1 of the patent (Appx00003):



Based on this discovery, the inventors developed a "spray-on" antenna to reduce the amount of equipment that was required to establish communications in isolated or devastated terrain or to



establish temporary or permanent command centers, hospitals, or garrisons. For example, their first patent application included data from a field test where they successfully transmitted a signal from an antenna spray painted on a tree. Ex. A at 30 (annotated version of filed copy). In that example, the tree acts as a "substrate" upon which the conductive particle based material is applied, but the inventors recognized that many other types of materials could be used as substrates. Appx00015, '071 patent at 5:29-37.

3

In addition to using conductive particle based material as an antenna, the inventors also developed antenna enhancer inventions that incorporated the conductive particle based material. For example, they discovered that this material could be placed inside the housing of a mobile device that already contains a conventional antenna. The modified mobile device may be able to transmit a more powerful signal, or it may be able to transmit a comparable signal using less battery power. *See, e.g,* https://www.youtube.com/watch?v=4efE_gO9lFo (inventor Anthony Sutera explaining applications and test results related to the inventions, including how conductive particle based material can be used to boost conventional antenna signals in older cell phones); see also Appx0001, '071 Patent at 13:55-14:10.

The inventors also discovered that the material may improve a conventional antenna even if the material is offset from the antenna itself. Appx00017-00018, '071 patent at 10:52-53; 11:45-53. For example, conductive particle based material may boost a mobile device's signal even if it is placed on the outside of the housing of the mobile device, such as on a cell phone bumper case. Appx00018, '071 Patent at 11:2-8.

These discoveries were significant and surprising. To explain them, the inventors theorized that the particles acted as micro-capacitors that provided more effective radiative properties than traditional conductive materials. Electrical engineers can broadly classify a material as either a conductor that transmits electricity well, or a dielectric/insulator, which does not. A capacitor is a device that includes two conductors that are very close together, with some dielectric material in between them. An exemplary capacitor is shown below (two conductive metal plates separated by a dielectric, i.e., air):



When electricity is applied to a capacitor, a net positive charge collects on one side and a net negative charge to collects on the other side. No current actually flows through the dielectric (the air gap in the example above).   But in an application where an alternating current is applied to a capacitor, such as the electromagnetic radiation which transmits signals to and from antennas, there is a flow of charge or "charging current" across the material as the capacitors charge and discharge.

The inventors believed that this background could at least partially explain their discoveries.  Appx00015, '071 patent at 6:20-26 ("Thus, it is believed that the conductive particle based material may act as an array of capacitors, which may be at least part of the reason why the conductive particle based material at least one of efficiently propagates electromagnetic radiation, efficiently absorbs electromagnetic radiation from space, and efficiently emits electromagnetic radiation into space.")  Thus, the claims of the patent require that the conductive particle based material contain conductive particles that are adjacent to one another but not touching.

## III.    LEGAL PRINCIPLES RELATED TO CLAIM CONSTRUCTION

### A.    Patent Claims Are Generally Given Their Ordinary and Customary Meanings

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Accordingly, importing limitations from the specification into the claims is a "cardinal sin" of claim construction.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).

How patent claims are construed is a legal question resolved by the Court.  *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1153 (Fed. Cir. 2015).  "Claim construction seeks to ascribe the 'ordinary and customary meaning' to claim terms as a person of ordinary skill in the art would have understood them at the time of invention."  *Sumitomo Dainippon Pharma v. Emcure Pahraceut.*, 887 F.3d 1153, 1157 (Fed. Cir. 2018) (quoting *Phillips*, 415 F.3d at 1312-14 and *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The Court begins with the plain language of the claims.  *See id.* at 1157.  "[T]he claims are 'of primary importance[ ] in the effort to ascertain precisely what it is that is patented.'"  *Id.* at 1157-1158 (quoting *Phillips*, 415 F.3d at 1312 and *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876)).

### B.    There Are Only Two Reasons to Stray From the Ordinary and Customary Meaning of Claim Terms

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Golden Bridge Tech., Inc. v. Apple Inc.*, 758

F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).

"To act as a lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term.'" *Sumitomo,* 887 F.3d at 1159 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). Accordingly, the Court may not rely on the specification to "redefine words" in the claim language; "[o]nly the patentee can do that." *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012).

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one."). "The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016).

### C.    Examples and Embodiments Should Not be Imported Into the Claims

In claim construction, the Court generally examines the intrinsic evidence to define the patented invention's scope. *Phillips*, 415 F.3d at 1314. This intrinsic evidence includes the

claims themselves, the specification, and the prosecution history. *Id.* "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is also part of the intrinsic evidence and may also inform the proper context for claim construction. However, it often lacks the clarity of the specification and thus is less useful for claim construction purposes as it represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation. *Phillips*, 415 F.3d at 1317. Providing context is not equivalent to adding additional limitations to the express claim language.

In addition to these types of intrinsic evidence, a court construing patent claims also reviews extrinsic evidence, such as dictionaries and expert testimony. Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).

## IV.     ARGUMENT REGARDING CLAIM CONSTRUCTION

The parties have only one claim construction dispute: whether an additional limitation should be added to claim 12.

| Claim Term | nCap's Proposal | Apple's Proposal |
|---|---|---|
| wherein a non-conductive material is disposed between | No construction is necessary | wherein a non-conductive material **rendering the** |

8

| the antenna enhancer element and the at least one of the radiating or receiving antenna | | **antenna enhancer element electrically isolated from ground** is disposed between the antenna enhancer element and the at least one of the radiating or receiving antenna |
| --- | --- | --- |

Apple seeks to commit the "cardinal sin" of claim construction by importing a new limitation into the claim language. *Teleflex, Inc.*, 299 F.3d at 1324. To justify such a stark departure from the ordinary and customary meaning of this claim, Apple must prove that nCap expressly defined another term in this claim to include the proposed limitation or prove that nCap expressly disavowed the claim scope outside of this additional limitation. Because it has not and cannot do so, the Court should find that the ordinary and customary meaning of this claim controls, and rule that no construction is necessary. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (explaining that when a party fails to show that a limitation should be imported into a claim and there are no further disputes as to the meaning of the claim language, the court may rule that no construction is necessary).

A. **The Claim Language Weighs Against Importing Defendants' Proposed Limitation.**

Nothing in the claim language requires the Court to inject Defendant's preferred limitation into this claim. The only claim in which this phrase appears—claim 12—requires a device housing, an antenna, and an antenna enhancer. The claim term at issue clarifies that there must be a non-conductive material disposed between the antenna and the antenna enhancer. Nothing in the claim requires isolation between the antenna enhancer and a ground. Thus, the claim language weighs against Defendants' proposal.

9

**B.    The Specification Weighs Against Importing Defendants' Proposed Limitation.**

The specification does not "clearly set forth a definition of the disputed claim term." *Sumitomo,* 887 F.3d at 1159; *CCS Fitness,* 288 F.3d at 1366.  Accordingly, it does not support a deviation from the plain and ordinary meaning of the claim language, let alone the importing of an additional limitation.

Nor does the specification clearly and unambiguously disavow embodiments where the conductive particle containing material is connected to ground.  Indeed, the specification mentions a "ground plane" with respect to some embodiments.  For example, it describes an embodiment where the conductive particle based material is connected to a substrate and it explains: "when the substrate 210 is a conductive material, the substrate may be utilized as a ground plane."  In the claim at issue here, the claim uses the term "antenna enhancer" to refer to the conductive particle based material.  Thus, this claim, like the specification, encompasses embodiments where that material is connected to ground or not connected to ground.  If the Court were to import Defendants' proposed limitation, it would exclude some of those embodiments from the scope of the claim.  Such a result is "rarely, if ever, correct."  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1320 (Fed. Cir. 2005)

**C.    The Prosecution History Does Not Justify Importing Defendant's Proposed Limitation.**

The prosecution history similarly lacks an express definition or disavowal that would justify Apple's proposed construction.  When the inventors filed the application that would become the '071 Patent, the original application contained three independent claims (claims 1, 13, and 24) and various dependent claims.  Claim 1 related to an "antenna system," claim 13

10

related to an "antenna enhancer system," and claim 24 related to a "method for fabricating a conformable antenna." Appx00062, Claims as filed November 22, 2011. The Patent Office found that claim 24 belonged in a separate application for method claims. Appx00100, Office Action of April 24, 2014 (requiring election between claims). Thus, the inventors used the '071 application to pursue antenna system and antenna enhancer claims. Appx00104, Reply to Restriction Requirement of: April 24, 2014. Through prosecution, the inventors did add a limitation to claim 13 to require electrical isolation. However, that claim was dropped from the application and a new antenna enhancer claim was added—application claim 38. Application claim 38 would later be renumbered as claim 12 when the application issued.

While the prosecution history does show experimentation with an electrical isolation limitation in a claim that is not at issue in this lawsuit, it does not indicate that this limitation is necessary or implied in all claims. More importantly, the prosecution history does not include an express disavowal of any claim scope that does not include this electrical isolation limitation. The fact that the inventors knew how to limit claim 12 to require electrical isolation, but expressly chose not to do so, confirms that it would be error for the Court to import this limitation into claim 12.

When the inventors added claim 12 (application claim 38), they provided the following brief explanation:

> Regarding new independent claim 38, this claim recites subject matter **related to** claim 13. Thus, the arguments set forth above with respect to claim 1 **may be applicable** to claim 38. Accordingly, is it respectfully submitted that claim 38 is allowable over AISENBREY.

Appx.00143, Reply to Office Action dated: October 24, 2014 at pg. 19 (emphasis added).

Notably absent from this statement is an express statement that the claim should be interpreted to

11

require electrical isolation from ground.  At most, this statement indicates that claim 38 is

"related to" claim 13—both claims are drawn toward antenna enhancer systems—and that some

of the arguments with respect to claim 1 "may be applicable" with respect to claim 38.  This is

not a clear and unmistakable disclaimer for any type of limitation, let alone a ground isolation

limitation.  Because the prosecution history does not include a clear and express disavowal of the

claim scope that is represented by Apple's proposed limitation, importing this limitation would

be improper.

## V.      LEGAL PRINCIPLES RELATED TO INDEFINTENESS

A patent claim must "particularly point[ ] out and distinctly claim[ ] the subject matter

which the applicant regards as his invention." 35 U.S.C. § 112. The primary purpose of the

definiteness requirement is to ensure that patent claims are written in such a way that they give

reasonable notice to the public of what falls within the claims. *All Dental Prodx, LLC v.*

*Advantage Dental Prods., Inc.*, 309 F.3d 774, 779–80 (Fed. Cir. 2002). Indefiniteness is a

question of law for the court to evaluate from the perspective of someone skilled in the relevant

art at the time the patent was filed. *H–WTech., L.C v. Overstock.com, Inc.*, 758 F.3d 1329, 1332

(Fed. Cir. 2014). "Any fact critical to a holding on indefiniteness . . . must be proven by the

challenger by clear and convincing evidence."  *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357,

1366 (Fed. Cir. 2003).

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134

S.Ct. 2120, 2124 (2014). This requirement strikes a "delicate balance" between "the inherent

limitations of language" and providing "clear notice of what is claimed." *Id.* at 2128 (internal citations omitted). The Supreme Court has recognized that "absolute precision is unattainable," and that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* Thus, "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (citation omitted).

A person of ordinary skill in the art may determine the scope of a term based on its context within the claim as a whole. For example, in *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1384 (Fed. Cir. 2015), the district court found that the phrase "spaced relationship" failed to provide a precise definition of the required spacing. The Federal Circuit reversed a finding of indefiniteness after noting that other claim language explained the function of the "spaced relationship" (detecting the EMG signal between the live and common electrodes) and a person of skill in the art would understand whether a particular spacing satisfies that function (e.g., "by calculating the point in which EMG signals are substantially removed"). Accordingly, it found the term not indefinite.

Similarly, a claim term is not indefinite when the nature of the invention allows a person of skill in the art to determine the scope of the term. For example, in *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575 (Fed. Cir. 1986), the Federal Circuit reversed a finding of indefiniteness based on the following term: "wherein said front leg portion is so dimensioned as to be insertable through the space between the doorframe of an automobile and one of the seats thereof."  Although this claim failed to provide precise dimensions for the components required to practice the claim, the Federal Circuit explained: "The claims were intended to cover

13

the use of the invention with various types of automobiles. That a particular chair on which the claims read may fit within some automobiles and not others is of no moment. The phrase 'so dimensioned' is as accurate as the subject matter permits, automobiles being of various sizes." *Id.*; *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1370 (Fed. Cir. 2015) (holding apparatus claim not indefinite despite the fact that the components depended on the shape and size of a patient's vertebra); *Cf. Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1356 (Fed. Cir. 2005) (finding the term "aesthetically pleasing" indefinite).

Where a relative term or term of degree is used, it is not indefinite if the intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims]." *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) (quoting *In re Marosi*, 710 F.2d 799, 803 (Fed. Cir. 1983)) (explaining that the term "not interfering substantially" was not indefinite even though it contains "no reference to a precise numerical measurement"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1261 (Fed. Cir. 2014) (similarly holding with regard to the term "look and feel"); *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1380 (Fed. Cir. 2017) (similarly holding with regard to the term "visually negligible").

## VI.    ARGUMENT REGARDING INDEFINITENESS

Because a patent is presumed valid, Defendant bears the burden of demonstrating that the asserted claims are invalid as indefinite. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012) (the burden to prove invalidity for any reason remains with the party challenging the patent). Defendant has identified various claim phrases that they contend render the claims indefinite, but they have yet not offered

14

evidence or an explanation as to how they intend to meet their burden.

### A.    "conductive particles dispersed in a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another"

Defendants contend that all of the asserted claims are invalid as indefinite because they contain the word "adjacent."  As noted above, courts have consistently held that relative terms and terms of degree do not render a claim indefinite.  In fact, courts have specifically held that the word "adjacent" does not render a claim indefinite.  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2015 WL 12697086, at *11 (D. Neb. July 28, 2015), aff'd in part, vacated in part, 879 F.3d 1332 (Fed. Cir. 2018); A*RT+COM Innovationpool GmbH v. Google Inc.*, No. CV 14-217-RGA, 2015 WL 3979576, at *10 (D. Del. June 26, 2015), amended, No. CV 1:14-217-TBD, 2016 WL 2945194 (D. Del. May 20, 2016); *ADC Telecommunications, Inc. v. Switchcraft, Inc.*, No. CIV. 04-1590ADMJSM, 2005 WL 2206115, at *11 (D. Minn. Sept. 9, 2005); *Chem. Separation Tech., Inc. v. United States*, 51 Fed. Cl. 771, 788 (2002); *See also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1349 (Fed. Cir. 2005) (construing the term "adjacent" to mean "not distant"); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) (overturning district court decision that the term "near" was indefinite); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 931 (Fed. Cir. 2013) (same).

The word "adjacent" is a common English word, easily understood by a lay jury.  The inventors used this word according to its ordinary meaning, and thus no further construction is necessary.  The specification confirms this understanding by explaining the properties of the conductive particle containing material.  For example, it explains that this material consists of conductive particles dispersed in a non-conductive or semi-conductive binder.  Appx00014, '071 Patent at 4:60-5:3.  If these particles are all touching, then the material would act as a conductor,

allowing electricity to flow freely throughout the material. If the particles are all dispersed far enough from each other that electricity cannot flow through the particles, then the material would act as an insulator preventing the flow of electricity. What is desired is for the majority of the particles to be near each-other, but not touching, so that the material has properties of a capacitor.[1] Appx00015, '071 Patent at 6:15-26. Basic concepts like conductivity, insulation, and capacitance are readily understandable to a person of skill in the art. Thus, this claim term is not indefinite.

The specification teaches alternative methods of stabling the proximity of the conductive particles. Specifically, the specification outlines parameters of the material which are observed (e.g. the ability to "at least one of efficiently propagate electromagnetic radiation, efficiently absorb electromagnetic radiation from space, and efficiently emit electromagnetic radiation into space", and a variable resistance of about "3-17 ohms across any given two points on the surface"). Appx00015, '071 Patent at 5:63-65 and 6:5-8. And the specification further requires an effective amount of conductive particles relative to the binder to achieve this result. Appx00014, '071 Patent at 4:60-65. Because the size of the particles is variable ("about 400 nanometers to 30 micrometers"), Appx00014, '071 Patent at 4:54-55, the amount of particles necessary to achieve the desired results, and the proximity of those particles, is relative and variable. The specification and claims provide ample detail to enable one of skill in the art to create the claimed invention based upon the

---

[1] This may also be described as non-Ohmic conduction.

16

**B.    "Antenna Enhancer"**

Defendants contend that the terms "antenna enhancer" and "antenna enhancer element" are indefinite for failing to specify the amount of enhancement.  Express amount, however, is not a necessary requirement for definiteness.  When a patent claim provides an explanation or examples such that a person of skill in the art would understand how to practice a claim, the claim is not indefinite.  For example, in *Allergan, Inc. v. Teva Pharm. USA, Inc.*, the Defendant had argued that the phrase "enhancing tearing" was indefinite because it failed to specify the amount of enhancement necessary.  No. 2:15-CV-1455-WCB, 2016 WL 7210837, at *11 (E.D. Tex. Dec. 13, 2016).  The court disagreed.  It found that there was no need for the patentee to claim a specific amount of enhancement.  Rather, the claim was infringed if some enhancement occurred.  Thus, it found the claim not indefinite.  *Id.*; *accord Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374 (Fed. Cir. 2005); *Exxon Research and Eng'g Co. v. U.S.*, 65 F.3d 1371 (Fed. Cir. 2001); *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-CV-654, 2015 WL 11401855, at *10 (W.D. Mich. Apr. 28, 2015); *Alberta Telecomm. Research Centre v. AT&T Corp.*, No. 09-3883, 2012 WL 3990540 (D. N.J. Sept. 10, 2012).  Similarly, in this case, the specification provides specific examples of antenna enhancers (Appx00017, '071 Patent at 10:30-14:39), as well as testing data explaining some ways to measure enhancement (Appx00019, '071 Patent at 13:50-14:39).  Thus, these terms do not render the claims indefinite.

DATED:  August 28, 2018.        Respectfully submitted,

**CALDWELL CASSADY & CURRY**

/s/ *Jason D. Cassady*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email:  bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email:  jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email:  acurry@caldwellcc.com
Alexis F. Mosser
Texas State Bar No. 24070675
Email: amosser@caldwellcc.com
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**DURHAM JONES & PINEGAR, P.C.**
J. Mark Gibb
Lyndon R. Bradshaw

*Attorneys for Plaintiffs*