IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **nCAP LICENSING, LLC;**<br>**nCAP TELECOMMUNICATIONS, LLC;**<br>**nCAP MEDICAL, LLC;**<br><br>      Plaintiffs,<br>v.<br><br>**APPLE INC.,**<br><br>      Defendants. | **MEMORANDUM DECISION AND**<br>**ORDER DENYING APPLE'S MOTION**<br>**FOR PARTIAL SUMMARY JUDGMENT**<br>**AND DENYING nCAP'S**<br>**CROSS-MOTION FOR CLAIM**<br>**CONSTRUCTION**<br><br>2:17-cv-905<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Brooke C. Wells |

This is a patent infringement case. Plaintiffs nCAP Licensing, LLC; nCAP

Telecommunications, LLC; and nCAP Medical, LLC (collectively nCAP) bring suit against

Defendant Apple, Inc. nCAP alleges several of Apple's devices infringe on nCAP's patent for

antennas and antenna enhancers.[1] Before the court are Apple's Motion for Partial Summary

Judgment of Invalidity and Non-Infringement, as well as nCAP's Cross-Motion for Claim

Construction.[2] After the benefit of oral argument and supplemental briefing,[3] the court DENIES,

as premature, Apple's request that the court invalidate nCAP's patent as indefinite. Even though

it adopts Apple's claim construction, it DENIES as premature Apple's request for partial

summary judgment. Accordingly, the court DENIES Apple's Motion for Partial Summary

Judgment, and nCAP's Cross-Motion for Claim Construction.

---

[1] *See generally* Dkt. 60 (First Amended Complaint).

[2] *See* Dkts. 134, 129.

[3] *See* Dkts. 227, 228, 231.

The Patent Office issued to nCAP the patent in dispute, U.S. Patent No. 9,088,071 (Patent #071).[4]  Claims 1–11 of Patent #071 describe antennas; whereas Claims 12–15 describe antenna enhancers.[5]  An antenna is a device that converts an electrical signal into electromagnetic radiation to transmit information through space, or that converts electromagnetic radiation into an electrical signal.[6]  An antenna enhancer element is a device that, when placed near an antenna, enables that antenna to propagate, emit, or absorb electromagnetic radiation more efficiently than that same antenna in a stand-alone configuration.[7]

The patented antennas and antenna enhancers use conductive particle based material (CPBM).[8]  This material consists of conductive particles suspended in a semi-conductive or



non-conductive binder.[9]  For example, CPBM may consist of silver particles suspended in a semi-conductive or non-conductive paint or gel that cures, thus fixing the silver particles relative to each other.[10]  A microscopic image of CPBM is shown in Figure A.[11]

**Figure A**

---

[4] *See generally* Dkt. 130 (Joint Appendix) at Appx. 00001–23.  Hereinafter, all citations to "Appx." refer to the Joint Appendix at Docket 130.

[5] Appx. 00022–23.

[6] Appx. 00013 at 1:32–39.

[7] Appx. 00014 at 3:65–67, 4:1–4; Appx. 00015 at 6:5–9, 6:20–26; Appx. 00017 at 10:47–50.

[8] Appx. 00013 at 1:59–62, 2:1–3.

[9] Appx. 00013 at 1:60–62, 2:4–5; Appx. 00014 at 4:20–67; Appx. 00015 at 5:1–45.

[10] *See supra* note 9.

[11] Figure A is reproduced from Figure 1 of the Patent.  Appx. 00003.

The parties dispute the proper construction of the claim term "antenna enhancer element."[12] That disputed claim term is contained in independent Claim 12 of the #071 Patent. Claim 12 states,

> What is claimed is . . . .
>
> 12. An antenna enhancer comprising:
>
> an antenna enhancer element formed of a conductive particle based material, the antenna enhancer element being disposed at an area of an inner side of a housing of a wireless device that is adjacent to at least one of an internal radiating or receiving antenna,
>
> wherein the housing of the device is formed of a conductive material,
>
> wherein a non-conductive material is disposed between the **antenna enhancer element** and the at least one of the radiating or receiving antenna, and
>
> wherein the conductive particle based material comprises conductive particles dispersed in a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another.[13]

Apple contends a limitation should be imposed on Claim 12 based on arguments nCAP made to the Patent Office during patent prosecution.[14] In essence, Apple invokes the doctrine of prosecution history disclaimer.[15] nCAP disagrees that prosecution history disclaimer applies, and rejects any proposed limitation on Claim 12.[16] Before resolving the dispute over prosecution history disclaimer, the court will first recite the law governing the dispute.

---

[12] *See, e.g.*, Dkts. 129 at 8–12; 131 at 11–15.

[13] Appx. 00023 at 22:1–14 (emphasis added).

[14] *See* Dkt. 131 at 11–15.

[15] *See id.*

[16] *See* Dkt. 129 at 5–12.

## LEGAL STANDARD

Analysis of patent infringement is a two-step process.[17] First, a court construes the meaning of a patent's contested claim terms as a matter of law.[18] This initial claim construction is necessary because claims define the invention to which the patentee owns the right to exclude.[19] Second, a factfinder compares the claims to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent in the accused device.[20] Currently at issue is the first step: claim construction.

Claim terms generally embrace their "ordinary and customary meaning, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention."[21] The person of ordinary skill is deemed to read claim terms in view of the entire patent, including extrinsic and intrinsic evidence.[22] Extrinsic evidence consists of expert reports, inventor testimony, dictionaries, learned treatises, and other evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.[23] For many reasons, extrinsic

---

[17] *Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

[18] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996); *Teleflex*, 299 F.3d at 1323.

[19] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

[20] *Teleflex*, 299 F.3d at 1323.

[21] *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) (citing *Phillips*, 415 F.3d at 1312–13).

[22] *Phillips*, 415 F.3d at 1313.

[23] *Id.* at 1314, 1317.

evidence is generally less reliable than intrinsic evidence.[24]  But a court in its sound discretion

may admit and rely on extrinsic evidence.[25]

Intrinsic evidence consists of the terms of the claims themselves, the remainder of the

specification, and the prosecution history.[26]  Although the claim terms themselves and

specification frequently serve as the Rosetta Stones of claim construction,[27] prosecution history

may inform claim meaning.[28]  Prosecution history may, for example, demonstrate estoppel or

disclaimer.[29]

For prosecution history disclaimer to attach, a patentee must clearly and unmistakably

disavow the full scope of a claim term.[30]  "A patentee could do so, for example, by clearly

characterizing the invention in a way to try to overcome rejections based on prior art."[31]  "The

---

[24] *Id.* at 1318–19.

[25] *Id.* at 1319 ("In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.").

[26] *Id.* at 1314.

[27] *See id.* at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."); *id.* at 1315 ("[T]he specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal quotation marks omitted).

[28] *Id.* at 1317.

[29] *Id.*; *see also Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 862 (Fed. Cir. 1991) (explaining the difference "between using the contents of the prosecution history to reach an understanding about disputed claim language [i.e., claim disclaimer] and the doctrine of prosecution history estoppel which estops or limits later expansion of the protection accorded by the claim to the patent owner under the doctrine of equivalents when the claims have been purposefully amended or distinguished over relevant prior art to give up scope") (internal citation and quotation marks omitted); s*ee Poly-America*, 839 F.3d at 1136 ("Disavowal can be effectuated by language in the specification or the prosecution history."); *see also* Donald S. Chisum, *5A Chisum on Patents* § 1805 (2019) ("Illogical consequences may arise if a court treats arguments not linked to specific claim language as estoppel but not as disclaimer limiting the literal scope of a claim.").

[30] *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008); *see also Poly-America*, 839 F.3d at 1136 ("[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature."); *M.I.T. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) ("Where the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations, we have declined to find prosecution disclaimer.") (internal quotation marks omitted).

[31] *Computer Docking Station*, 519 F.3d at 1374.

party seeking to invoke prosecution history disclaimer bears the burden of proving the existence

of a clear and unmistakable disclaimer that would have been evident to one skilled in the art."[32]

The doctrine of prosecution history disclaimer serves at least two purposes. First, it

"protects the public's reliance on definitive statements made during prosecution by precluding

patentees from recapturing through claim interpretation specific meanings [clearly and

unmistakably] disclaimed during prosecution."[33] Second, it preserves the Patent Office's

"gatekeeping role" by preventing a patentee from "recaptur[ing] in an infringement action the

very subject matter surrendered as a condition of receiving the patent."[34]

## ANALYSIS

nCAP clearly and unmistakably disclaimed the full scope of Claim 12. The prosecution

history shows nCAP characterized Claim 12 as electrically isolated from ground to overcome

any rejection based on prior art.[35] The language of Claim 12, as well as Patent #071's

specification, are silent on the electrical-isolation limitation.[36] Based solely on prosecution

---

[32] *M.I.T.*, 839 F.3d at 1119.

[33] *Computer Docking Station*, 519 F.3d at 1374–75 (brackets in original) (internal quotation marks omitted).

[34] *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002); *see also* R. Carl Moy, *4 Moy's Walker on Patents* § 13:102 (4th ed.) (explaining the rationale for prosecution history estoppel "rests primarily on the desire to ensure forthright discussions of the intended claim scope during prosecution before the United States Patent and Trademark Office.").

[35] *See* Appx. 00114, 00130, 00138–39, 00143.

[36] *See* Appx00001–23. It is possible the court is wrong about the specification's and claims' silence. But any error is in nCAP's favor. The specification and claims seem to create an "internal logic" that should inform the court's construction. *See Markman*, 517 U.S. at 389. That internal logic, however, runs in Apple's, not nCAP's, favor. Claim 12 requires the placement of a "*non-conductive material* . . . between the antenna enhancer element and the at least one of the radiating or receiving antenna." Hence, it likely coheres to Claim 12's internal logic to require electrical isolation between the antenna enhancer element and the at least one of the radiating or receiving antenna. Yet, at this stage in the litigation the court is not familiar enough with the underlying scientific principles to stake out its analysis on an "internal logic" argument. And the court need not do so because the prosecution history clearly and unmistakably shows disclaimer, and because the specification and claims do not provide a definition of "antenna enhancer element" "that would override or make the distinctions in the prosecution history ambiguous." *Computer Docking Station Corp.*, 519 F.3d at 1378.

history disclaimer, the court construes the term "antenna enhancer element" to require electrical isolation from ground. The court will elaborate on its reasoning below.

The parties dispute whether prosecution history disclaimer applies to the claim term, "antenna enhancer element," which is located in Claim 12[37] Each party's proposed construction of the disputed claim term is listed below.

| Disputed Term in Claim 12 | wherein a non-conductive material is disposed between the antenna enhancer element and the at least one of the radiating or receiving antenna[38] |
|---|---|
| nCAP's Proposed Construction | No construction necessary[39] |
| Apple's Proposed Construction | wherein a non-conductive material **rendering the antenna enhancer element electrically isolated from ground** is disposed between the antenna enhancer element and the at least one of the radiating or receiving antenna[40] |

The court adopts Apple's Proposed Construction because nCAP clearly and unmistakably disclaimed the full scope of the disputed claim term "antenna enhancer element."

By way of background, the original application for Patent #071 was rejected by the Patent Office because its claims were anticipated by a published patent application, the Aisenbrey Application.[41] In response, nCAP amended its patent application.[42] Among other

---

[37] *See, e.g.*, Dkts. 131 at 11–15; 129 at 5–12.

[38] Appx. 00023 at 22:8–10.

[39] Dkt. 129 at 8–9.

[40] Dkt. 131 at 11–15.

[41] Appx. 00113–00114.

[42] *See, e.g.*, Appx. 00130, 00134.

changes, nCAP amended Claim 13 and added new Claim 38.[43]  (Claim 38 would eventually

issue as Claim 12.[44]  Hereinafter, the court refers to Claim 38 as Claim 12.)  Snapshots of

amended Claim 13 and new Claim 12 are shown below.

| Amended Claim 13 | New Claim 12 (38) |
| --- | --- |
| 13. (Currently Amended)  An antenna enhancer ~~system comprising: an antenna; and an antenna enhancer~~ comprising:<br>an antenna enhancer element formed of a conductive particle based material, the antenna enhancer element being disposed adjacent to, ~~and~~ offset from, and without encircling, at least one of a radiating or receiving ~~the~~ antenna element,<br>==wherein the antenna enhancer element is electrically isolated,== and<br>~~wherein the conductive particle based material comprises conductive particles and a binder, and wherein, when the conductive particle based material is disposed adjacent to and offset from the antenna, the conductive particles are~~ wherein the conductive particle based material comprises conductive particles dispersed in ~~the~~ a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another. | 38. (New)  An antenna enhancer comprising:<br>an antenna enhancer element formed of a conductive particle based material, the antenna enhancer element being disposed at an area of an inner side of a housing of a wireless device that is adjacent to at least one of an internal radiating or receiving antenna,<br>wherein the housing of a wireless device is formed of a conductive material,<br>==wherein a non-conductive material is disposed between the antenna enhancer element and the at least one of the radiating or receiving antenna,== and<br>wherein the conductive particle based material comprises conductive particles dispersed in a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another. |

*Claim 13 Disclaimer*

As these snapshots demonstrate, nCAP intended to overcome the Patent Office's

rejection by inserting a limitation within amended Claim 13.[45]  That limitation disclaims antenna

enhancer elements connected to ground, stating "the antenna enhancer element is electrically

isolated."[46]  Moreover, in correspondence with the Patent Office, nCAP clarified its construction

of Claim 13, stating "[nCAP's] claimed antenna enhancer element is electrically isolated."[47]

nCAP stressed the limitation differentiates its "antenna enhancer element" from the Aisenbrey

---

[43] *See supra* note 41; *see also* Appx. 00138, 00143 (explaining the rationale for the amendments).

[44] *See supra* note 42.

[45] Appx. 00138–00139.

[46] *See id.*; Appx. 00130.

[47] Appx. 00139.

Application because the putative enhancer in the Aisenbrey Application was "electrically connected to ground" whereas nCAP's "antenna enhancer is electrically isolated."[48]

### Claim 12 Disclaimer

In correspondence with the Patent Office, nCAP also sent an anticipatory disclaimer for Claim 12.[49] In doing so, nCAP hitched Claim 13's electrical-isolation limitation to Claim 12. The anticipatory disclaimer states,

> Regarding new independent claim [12], this claim recited subject matter related to claim 13. Thus, the arguments set forth above with respect to claim 1[3] may be applicable to claim [12]. Accordingly, it is respectfully submitted that Claim [12] is allowable over AISENBREY.[50]

At first blush, nCAP's disclaimer in favor of Claim 12's approval seems ambiguous because the disclaimer does not articulate how Claim 12 is "related" to amended Claim 13. But the prosecution history answers the question of how Claim 12 relates to Claim 13—both claims are electrically isolated. The disclaimer's very first sentence clearly indicates the paragraph pertains to the relationship between claim 12 and 13, i.e., the only two independent antenna enhancer claims in the patent application at that time.[51] Building on that starting point, nCAP connected the next sentence with the very first sentence by stating: "**Thus**, the arguments set forth above with respect to claim 1[3] may be applicable to claim [12]." In the final sentence, nCAP invokes a continued logical progression from the previous sentences and reaffirms the paragraph pertains to Claim 12 and 13 by stating: "**Accordingly**, it is respectfully submitted that

---

[48] *Id.*

[49] Appx. 00143.

[50] *Id.* There was a clear and unmistakable typographical error in nCAP's apology. *See infra* page 13. The apology mistakenly referred to Claim 1, instead of amended Claim 13. That mistake is corrected above by the insertion of the number three in brackets.

[51] *See* Appx. 00143.

Claim [12] is allowable over AISENBREY." Based on the grammar and logic, a person skilled in the art would understand nCAP's disclaimer, in substance, to provide, "Claim 13 recites an electrical-isolation limitation applicable to Claim 12 . . . Accordingly, it is respectfully submitted that Claim [12] is allowable over AISENBREY."

Critically, nCAP articulates no other plausible reason a patent officer could allow Claim 12 over the Aisenbrey Application, nor a plausible, alternative understanding of its anticipatory disclaimer.[52]

nCAP's four arguments opposing the court's construction suffer from fatal legal flaws. First, nCAP argues that because the literal wording of the term "antenna enhancer element" does not expressly memorialize the disclaimed scope—lack of electrical connection to ground—Claim 12 should not be limited consistent with nCAP's disclaimer.[53] But that argument reflects a misunderstanding of prosecution history disclaimer: the doctrine prevents patentee's from "recapturing through claim interpretation specific meanings [clearly and unmistakably] disclaimed during prosecution."[54] Because nCAP clearly and unmistakably disclaimed the otherwise full scope of Claim 12, nCAP cannot now recapture that full scope by pointing to the literal wording of disclaimed claim language.

---

[52] For example, in supplemental briefing, nCAP passes on the opportunity to explain how Claim 12 is patentably distinct over the Aisenbrey Application absent an electrical-isolation requirement. *See* Dkt. 231 at 5; *see also* Dkt. 228 at 2–4 (recounting the arguments nCAP made at the claim construction hearing held on April 4, 2019).

[53] Dkt. 159 at 4–7.

[54] *Computer Docking Station*, 519 F.3d at 1374–75 (brackets in original) (internal quotation marks omitted); s*ee supra* pages 5–6 & note 34.

Second, nCAP argues applying disclaimer would impermissibly exclude "some embodiments" from the specification.[55]  But that argument is legally unsound.  When a patentee has disavowed a claim scope that would cover embodiments disclosed in the specification, there is no legal requirement the disavowed claim be construed to embrace such embodiments.[56]  nCAP's second argument is also factually misdirected.  The embodiment nCAP references pertains to Figure 2 of the #071 Patent.[57]  And Figure 2 depicts an "antenna" not an "antenna enhancer."[58]  The court's construction of the term "antenna enhancer element" will therefore not exclude the "antenna" embodiment referenced by nCAP.

Third, nCAP argues Claim 13's electrical-isolation limitation is unconnected to Claim 12.[59]  nCAP attempts to support its argument with legal authority concerning claim differentiation.[60]  "But claim differentiation does not serve to broaden claims beyond their meaning in light of the patent as a whole, and it cannot override clear statements of claim scope found in the specification and prosecution history."[61]  nCAP's anticipatory disclaimer for Claim 12, when considered in the view of the patent as a whole, disproves nCAP's third argument.

---

[55] Dkt. 159 at 2–4.

[56] *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005) ("[L]imitations may be construed to exclude a preferred embodiment if the prosecution history compels such a result.").

[57] *See* Dkt. 129 at 10.

[58] *See* Appx. 00004; Appx. 00016 at 7:24–8:19.

[59] Dkt. 159 at 2–4.

[60] *Id.*

[61] *Poly-America*, 839 F.3d at 1137.

Fourth, nCAP argues prosecution history disclaimer cannot apply because the

*prosecution history's* literal language—specifically the absence of a single digit—relates to

Claim 1.[62]

| Apple's Interpretation of the Disclaimer | nCAP's Interpretation of the Disclaimer |
|---|---|
| Regarding new independent claim [12], this claim recited subject matter related to claim 13. Thus, the arguments set forth above with respect to claim **1[3]** may be applicable to claim [12]. Accordingly, it is respectfully submitted that Claim [12] is allowable over AISENBREY. | Regarding new independent claim [12], this claim recited subject matter related to claim 13. Thus, the arguments set forth above with respect to claim **1** may be applicable to claim [12]. Accordingly, it is respectfully submitted that Claim [12] is allowable over AISENBREY. |

nCAP's literalist argument fails, however, because it renders the disclaimer incoherent.

Claim 1 concerns antennas, and Claim 1 adopts limitations concerning antennas.[63] In contrast,

Claim 12 concerns *antenna enhancers*, and Claim 12 cannot sensibly adopt any of Claim 1's

antenna-related limitations.[64] nCAP's argument also fails because it overlooks three critical

conjunctive adverbs included in the disclaimer—"Regarding," "Thus," and "Accordingly."

nCAP fails to explain how an ordinary English speaker, let alone a person skilled in the art,

could make sense of these conjunctive adverbs without perceiving a clear and unambiguous

typographical error.[65]

---

[62] *See* Dkt. 231. At the *Markman* hearing, the court granted nCAP's oral motion to file supplemental briefing concerning this fourth argument. Dkt. 227.

[63] *See* Appx. 00136–00138 (explaining Claim 1 is patentably distinct over the Aisenbrey Application because Claim 1 requires the unique placement of CPBM onto a substrate).

[64] Unlike Claim 1, Claim 12's antenna enhancer does not concern the placement of CPBM onto a substrate. *Compare* Appx. 00022 at 20:47–63 *with* Appx. 00023 at 22:1–14; *see* Dkt. 228 at 3.

[65] *Compare* Dkt. 228 *with* Dkt. 231.

At bottom, nCAP invites a literal, even if incoherent, interpretation of its anticipatory disclaimer.[66] The court declines nCAP's invitation. Just as the court understands the law to require contextual analysis of the claims themselves,[67] the court understands the law to require contextual analysis of any potential disclaimers contained in the prosecution history.[68] If the law were to require any literal interpretation, it should be the literal interpretation of the claims themselves. Short and crafted with utmost attention by those skilled in the art, claims are far more amenable to errorless perfection than lengthy disclaimers. There is thus greater reason to interpret claims literally than there is to interpret prosecution history literally. Courts, however, have declined even to interpret claims literally.[69] If carefully crafted claims do not warrant literal interpretation, then certainly potential disclaimers—which are afforded less attention during patent prosecution—are undeserving of strict literal interpretation. Based on a contextualist interpretation of nCAP's disclaimer, and for the reasons just given, the court concludes Apple carried its burden of showing the existence of a clear and unmistakable typographical error.

To bolster the four arguments just rejected, nCAP seeks to introduce expert testimony that, almost exclusively, reiterates those rejected arguments.[70] Reiteration, even with the imprimatur of a knowledgeable expert, is of little value. Because the expert testimony will not

---

[66] *See* Dkt. 231 at 2 ("[S]tatements which *on their face are not disclaimer* should not be determined to result in disclaimer by classifying them as 'typos.'").

[67] *See supra* notes 21–34 and the accompanying text.

[68] *See Computer Docking Station*, 519 F.3d at 1374 ("[P]rosecution history must always receive consideration in context.").

[69] *See supra* notes 21–34 and the accompanying text.

[70] Dkt. 159 at 5–7; Dkt. 231 at 1, 4.

significantly aid the court's claim construction, and in light of the flaws of expert testimony, the court exercises its discretion to exclude it.[71]

## CONCLUSION

Based on nCAP's disavowal, the court DENIES nCAP's Cross-Motion for Claim Construction and adopts instead Apple's Proposed Construction of the Disputed Term in Claim 12: "wherein a non-conductive material rendering the antenna enhancer element electrically isolated from ground is disposed between the antenna enhancer element and the at least one of the radiating or receiving antenna."

Turning to Apple's Partial Motion for Summary Judgment,[72] nCAP asserts it has not yet had the opportunity discover whether Apple's accused devices employ antenna enhancers electrically isolated from ground.[73] The court therefore DENIES as premature Apple's Partial Motion for Summary Judgment. Accordingly, the court DENIES without prejudice Apple's Motion for Partial Summary Judgment, and it DENIES nCAP's Cross-Motion for Claim Construction.

SO ORDERED this 6th day of June, 2019.

BY THE COURT:

_____

ROBERT J. SHELBY
Chief United States District Judge

---

[71] *See Phillips*, 415 F.3d at 1318–19.

[72] Dkts. 134 (redacted); 136 (under seal).

[73] *See* Dkt. 158 at 2.