Brent O. Hatch (5715)
bhatch@hjdlaw.com
Lara A. Swensen (8493)
lswensen@hjdlaw.com
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Ameet A. Modi (*admitted pro hac vice*)
amodi@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400

Peter C. Magic (*admitted pro hac vice*)
pmagic@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 573-1900

*Attorneys for Defendant Apple Inc.*
*[Additional Counsel Listed in Signature Block]*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| nCAP LICENSING, LLC, nCAP TELECOMMUNICATIONS LLC, nCAP MEDICAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **DEFENDANT APPLE INC.'S MOTION FOR THE IMPOSITION OF A BOND FOR COSTS**<br><br>**FILED UNDER SEAL**<br><br>Case No.: 2:17-cv-00905<br><br>Judge: Howard C. Nielson, Jr.<br><br>Magistrate Judge: Cecilia Romero |

**TABLE OF CONTENTS**

INTRODUCTION AND RELIEF SOUGHT ................................................................................1

LEGAL STANDARD ....................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.        nCAP's Patent Infringement Claims Against Apple Are Meritless. ...................................2

        A.        nCAP cannot demonstrate that the conductive adhesive used for grounding in Apple's products infringes nCAP's antenna patents. ...........................................3

        B.        Apple has a reasonable likelihood of proving that the asserted claims are invalid, particularly under nCAP's application of the claims as purportedly broad enough to encompass conductive adhesive used for grounding. ...................5

II.        Failure To Impose A Bond Will Prejudice Apple. ..............................................................7

        A.        Apple is entitled to costs, if it prevails, and its costs are reasonable. ......................7

        B.        Without a bond, Apple may never recover its costs because nCAP's principals could become insolvent or shift assets to non-party entities they control. ......................................................................................................................8

        C.        nCAP shifting assets is not just a hypothetical concern—the principals of nCAP have a history of using corporate structures to avoid liabilities. ..................9

III.       A Cost Bond Will Not Prejudice Plaintiffs. .......................................................................10

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Pages**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
    889 F.3d 735 (Fed. Cir. 2018) ................................................................................................5

*3Form, Inc. v. Lumicor, Inc.*,
    No. 2:12-cv-293, Dkt. 98 (D. Utah Sept. 28, 2018) ..........................................................1, 6

*Aggarwal v. Ponce School of Medicine*,
    745 F.2d 723 (1st Cir. 1984)...................................................................................................2

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ................................................................................................................7

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    No. 08-CV-1992, 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010) ...............................2, 8, 9

*Gay v. Chandra*,
    682 F.3d 590 (7th Cir. 2012) .............................................................................................2, 10

*K-TEC, Inc. v. Vita-Mix Corp.*,
    No. 2:06-cv-108, Dkt. 900 (D. Utah Apr. 6, 2011) ................................................................7

*National Oilwell Varco, L.P. v. Pason Sys. USA*,
    No. 1-03-cv-2579, Dkt. 368 (D. Colo Sept. 25, 2012) ..........................................................8

*Paramount Film Distrib. Corp. v. Civic Ctr. Theatre, Inc.*,
    333 F.2d 358 (10th Cir. 1964) ................................................................................................1

*Phillip M. Adams & Assocs., LLC, v. Sony Elecs. Inc.*,
    No. 1:05-cv-64, Dkt. 2027 (D. Utah Nov. 7, 2013).........................................................7, 8

*Piallat v. Replogle*,
    125 F.R.D. 165 (D. Colo. 1989) .............................................................................................2

*Shelton v. Courtyard Mgmt. Corp.*,
    No. 09-cv-01761, 2009 WL 2867853 (D. Colo. Sept. 3, 2009) ..........................................2

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ................................................................................................7

**Statutes**

Fed. R. Civ. P. 54(d)(1)....................................................................................................................7

## INTRODUCTION AND RELIEF SOUGHT

Throughout this case, nCAP has asserted, without proof, that conductive adhesives used in Apple's products infringe patents directed to "antennas" and "antenna enhancers." As Apple has repeatedly informed nCAP, Apple uses conductive adhesives for **grounding** circuits, **not** as "antennas" or "antenna enhancers," and has done so for years *before* nCAP's alleged invention. Apple even patented the use of conductive adhesive nCAP now accuses *before* nCAP's alleged invention. nCAP thus faces the "inescapable dichotomy" that its patents cannot be both valid and infringed by Apple's products. *See 3Form, Inc. v. Lumicor, Inc.*, No. 2:12-cv-293, Dkt. 98 at *7 (D. Utah Sept. 28, 2018). nCAP's allegations of patent infringement thus have no merit.

Nonetheless, while nCAP continues to pursue this litigation, Apple's costs of defending against these meritless allegations continue to mount. And if Apple prevails, Apple may be unable to recover those costs because nCAP may become insolvent or move its assets out of the named Plaintiffs. Indeed, nCAP's principals have a history of moving assets among the many companies they control. Apple therefore requests that the Court require nCAP to post a bond of $180,000 to cover the costs that Apple may recover by statute if it prevails over nCAP's frivolous claims.

## LEGAL STANDARD

In the Tenth Circuit, a district court has discretion to impose a bond to cover costs. *See Paramount Film Distrib. Corp. v. Civic Ctr. Theatre, Inc.*, 333 F.2d 358, 362 (10th Cir. 1964) (affirming district court's decision regarding "security for costs" as "within the court's discretion"). While the Tenth Circuit has not set forth a standard for evaluating requests for imposition of a bond, other circuits, including the First, Seventh, and Ninth Circuits, have instructed courts to consider three factors: "(1) the merits of the case, (2) the prejudice to the

1

defendant of not requiring a bond, and (3) the prejudice to the plaintiff of requiring a bond." *See Gay v. Chandra*, 682 F.3d 590, 594 (7th Cir. 2012) (citing *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727-28 (1st Cir. 1984) and noting "[t]he Ninth Circuit has cited the *Aggarwal* factors with approval"); *cf. Aggarwal*, 745 F.2d at 728 (explaining that the merits factor considers "the degree of probability/improbability of success on the merits"). Courts in this Circuit have applied a similar standard in considering requests for the imposition of a bond. *See, e.g., Piallat v. Replogle*, 125 F.R.D. 165, 166 (D. Colo. 1989) (considering the merits of the plaintiff's claims, costs that might be incurred by the defendant, and plaintiff's ability to pay); *Shelton v. Courtyard Mgmt. Corp.*, No. 09-cv-01761, 2009 WL 2867853, at *1 (D. Colo. Sept. 3, 2009) (same).

## ARGUMENT

### I. nCAP's Patent Infringement Claims Against Apple Are Meritless.

nCAP's assertion that electrical grounding tape (also called "conductive adhesive") used for grounding in Apple's products infringes claims directed to antennas—specifically "radiating antenna elements" and "antenna enhancer elements" made of "conductive particle based material"—has no merit. First, Apple uses conductive adhesives for grounding electrical circuits, not as the claimed "antennas" or "antenna enhancers." Second, Apple has used conductive adhesives for grounding in its products on sale in the United States for years before nCAP's alleged invention, and Apple even patented its use of conductive adhesives for grounding. Accordingly, as explained in detail below, nCAP's patents cannot be both valid and infringed by Apple's products, a fact that is "sufficient to demonstrate a reasonable possibility of success on the merits" and warrant the imposition of a bond. *See, e.g., Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-CV-1992, 2010 WL 3718848, at *5 (S.D. Cal. Sept. 20, 2010).

### A. nCAP cannot demonstrate that the conductive adhesive used for grounding in Apple's products infringes nCAP's antenna patents.

Apple has at least a reasonable probability of defeating nCAP's infringement allegations because: (1) as to the "antenna system" claims,[1] no proof exists that the accused conductive adhesive (the putative "radiating antenna element") "transmits electromagnetic radiation"; and (2) as to the "antenna enhancer" claims,[2] no proof exists that the accused conductive adhesive (the putative "antenna enhancer element") is "electrically isolated from ground."[3]

First, nCAP cannot demonstrate that the conductive adhesive used for grounding in Apple's products is a "radiating antenna element," as required by the "antenna system" claims of nCAP's patents. nCAP contends that a conductive adhesive— ▮▮▮▮ —applied to a flexible printed circuit board (the particular accused circuit board is called a ▮▮▮▮ in Apple's products is the "radiating antenna element" required by the claims. *See* Dkt. 273, Ex. D, nCAP's '071 Final Infringement Contentions ("Final IC") at 14; Ex. A, nCAP's '276 Final IC at 14. But Apple's engineers have testified, unambiguously, that ▮▮▮▮ *See* Ex. B, Pascolini Dep. Tr. at 52. To the contrary, the undisputed evidence demonstrates that ▮▮▮▮ *See id.* at 48, 153. nCAP has not contended otherwise. Indeed, nCAP's own contentions state that ▮▮▮▮

---

[1] Claims 1-11 of the '071 patent and claims 1-11 of the '276 patent.

[2] Claims 12 and 15 of the '071 patent.

[3] For reasons of simplicity and space constraints, Apple does not present in this motion every reason why the accused products do not infringe the asserted claims.

█████████████████████████████████████████

████ Dkt. 273, Ex. D, nCAP's '071 Final IC at 14 (emphasis added); Ex. A, nCAP's '276 Final IC at 14 (same). Furthermore, although the parties agreed to a construction of "radiating antenna element" as "an element of the antenna that transmits electromagnetic radiation," *see* Dkt. 167, Ex. A at 1, nCAP offers no evidence that the accused conductive adhesive "transmits electromagnetic radiation," let alone that it is an element of any antenna. *See* Dkt. 273, Ex. D, nCAP's '071 Final IC at 14-40; Ex. A, nCAP's '276 Final IC at 14-40. Thus, Apple has a strong likelihood of prevailing on the infringement allegations regarding the "antenna system" claims.

Second, nCAP cannot demonstrate that the conductive adhesive used for grounding in Apple's products is an "antenna enhancer element." nCAP contends that the same ███ conductive adhesive applied to the same flexible printed circuit board as in its "antenna system" claim allegations is the "antenna enhancer element" required by the claims. *See* Dkt. 273, Ex. D, nCAP's '071 Final IC at 196. The Court construed the claims of the '071 patent to require that the "antenna enhancer element" be "electrically isolated from ground." *See* Dkt. 234 at 14. But all evidence demonstrates that the accused conductive adhesive in Apple's products is used for grounding and thus is ***not*** electrically isolated from ground. For example, Apple engineer Mattia Pascolini, who is a Senior Director of Antenna Design and served as Apple's corporate representative in this case, testified that ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████ Dkt. 273, Appx0379, Pascolini Decl. ¶ 5; *see* Ex. B, Pascolini Dep. Tr. at 48:10-13 ████████████████████████████████████████████. Critically, nCAP does not dispute that fact. For example, nCAP asserted in its infringement contentions that

- 4 -

the accused conductive adhesive ▮

Dkt. 273, Ex. D, nCAP's '071 Final IC at 14 (emphasis added); Ex. A, nCAP's '276 Final IC at 14 (same). nCAP also stated in a letter to Apple that ▮

▮ *See* Ex. C, Apr. 3, 2019, nCAP Letter at 2 (emphasis added). Given that nCAP effectively concedes Apple's use of the accused adhesives is not consistent with the Court's construction of "antenna enhancer element," Apple has a strong likelihood of prevailing on the infringement allegations regarding the "antenna enhancer" claims.

>   **B.  Apple has a reasonable likelihood of proving that the asserted claims are invalid, particularly under nCAP's application of the claims as purportedly broad enough to encompass conductive adhesive used for grounding.**

Apple has at least a reasonable possibility of success on the merits as to proving the claims invalid because: (1) if the claims are read broadly enough to encompass conductive adhesive used for grounding, then they would be invalid because Apple has been using the same ▮ adhesive for grounding since years before nCAP applied for its asserted patents (Apple even patented such use of conductive adhesive as explained in its invalidity contentions); and (2) the patents fail to provide a disclosure sufficient to teach persons of ordinary skill in the art how to make the alleged "conductive particle based material" that is at the heart of the claims.

First, even if the claims of nCAP's antenna patents could be stretched so broadly as to cover Apple's use of conductive adhesive for grounding, that would only serve to invalidate nCAP's patents, because Apple has been using the ***same*** ▮ conductive adhesive for grounding its flexible circuit boards since before nCAP's alleged invention. *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 741-43 (Fed. Cir. 2018) (noting that "claim terms must be construed the same way for both invalidity and infringement"). For example, the Apple iPad

engineer responsible for antenna design testified that ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ *See* Ex. D, Gomez Dep Tr. at 60:25-61:11; Ex. E (announcing Apr. 3, 2010, release of the iPad); Ex. F, '071 Final iPad Invalidity Contentions; Ex. G, '276 Final iPad Invalidity Contentions.  Moreover, Apple patented its use of conductive adhesive for grounding flexible circuit boards—such as in U.S. Patent No. 7,672,142, which Apple charted in its invalidity contentions—long before nCAP's invention.  nCAP thus faces the "inescapable dichotomy" that its patents cannot be both valid and infringed by Apple's products.  *See 3Form*, at *4.

Second, nCAP's patents fail to enable skilled artisans at the time of the invention to create the allegedly novel "conductive particle based material" that is at the heart of the alleged invention. All claims of the patents-in-suit require a "conductive particle based material" that is made of "conductive particles dispersed in a binder so that at least a majority of the conductive particles are adjacent to, but do not touch, one another."  *See* Ex. H, '071 patent, claims 1-15; Ex. I, '276 patent, claims 1-11.  But nCAP's patents do not describe any specific conductive particle based material, much less teach how to make it.  Indeed, at least one of the inventors named on the patent—Eric Hernandez—***does not even know how to make it*** because nCAP's allegedly novel material is nothing more than conductive paint that the alleged inventors bought on the Internet:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Ex. J, Hernandez Dep. Tr. at 139:17-140:10. Another named inventor—and nCAP CEO—Mr. Sutera, stated in an email to a professor at the University of California at Santa Cruz that ▮

▮

▮:

▮

Ex. K at RAMIREZ000577. But the very purpose of a patent is to teach the public the "how" in exchange for a limited term of patent rights. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150-51 (1989). nCAP's patents fail to do so and thus are invalid for non-enablement. *See, e.g.*, *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999, 1002 (Fed. Cir. 2008).

### II. Failure To Impose A Bond Will Prejudice Apple.

#### A. Apple is entitled to costs, if it prevails, and its costs are reasonable.

As demonstrated above, Apple has a reasonable chance of prevailing and thus being awarded its costs in defending this litigation. *See* Fed. R. Civ. P. 54(d)(1) ("[C]osts—other than attorney's fees—should be allowed to the prevailing party.") Apple expects to incur at least approximately $180,000 in taxable costs through trial. A breakdown of Apple's incurred and expected costs is attached to this motion as Appendix A. These costs are taxable. *See K-TEC, Inc. v. Vita-Mix Corp.*, No. 2:06-cv-108, Dkt. 900 at *4 (D. Utah Apr. 6, 2011) (taxing costs for service fees, copies, exemplifications, and depositions and court transcripts); *Phillip M. Adams & Assocs., LLC, v. Sony Elecs. Inc.*, No. 1:05-cv-64, Dkt. 2027 at *7-9 (D. Utah Nov. 7, 2013) (same).

Furthermore, Apple's anticipated taxable costs are reasonable in light of the complex nature of this patent litigation, the numerous products accused, numerous third parties on the parties' initial disclosures (Ex. L, Plaintiffs' Initial Disclosures; Ex. M, Defendant's Initial Disclosures), the numerous issues raised by nCAP's assertions (including its now-dismissed unfair competition claim), and similar cases. *See, e.g., K-TEC, Inc.*, No. 2:06-cv-108, Dkt. 900 at *4 (awarding approximately $72,000 in costs in a patent case); *Phillip M. Adams*, No. 1:05-cv-64, Dkt. 2027 at *9 (awarding approximately $159,000 in a patent case); *National Oilwell Varco, L.P. v. Pason Sys. USA*, No. 1-03-cv-2579, Dkt. 368 (D. Colo Sept. 25, 2012) (awarding approximately $161,000 in costs in a patent case); *Gabriel Techs.*, 2010 WL 3718848, at *13 (finding $291,580 in anticipated costs reasonable when setting a bond in a patent case).

    **B.    Without a bond, Apple may never recover its costs because nCAP's principals could become insolvent or shift assets to non-party entities they control.**

Without the security of a cost bond, Apple may never recover its costs even if taxed by the Court because: (1) Plaintiffs may become insolvent; and (2) Plaintiffs may shift assets to third parties controlled by the same people who control Plaintiffs.

First, Plaintiffs may be insolvent by the time this matter concludes. ████████ ████████████████████████████████████████████████ *See* Ex. N, Spencer Dep. Tr. at 162:15-22. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. *See* Ex. O, Sutera Dep. Tr. at 65:24-66:6; Ex. P (Ex. 430). Mr. Sutera, Mr. Spencer, and nCAP Holdings are subject to pending lawsuits from creditors. *See, e.g., Katis v. nCAP Holdings, LLC*, No. 2:19-cv-00556, Dkt.

1 (D. Utah 2019) (seeking to collect over $2,000,000 on an existing judgment); *Preventative Energy Solutions, LLC v. nCAP Ventures 5, et al.*, No. 2:16-cv-809 (D. Utah) (seeking over $500,000 in damages for fraud and breach of contract). ██████████████████████████████████████████████████████████, posing a risk that Plaintiffs may become insolvent. *See, e.g.*, Ex. Q, Graham Dep. Tr. at 66:24-67:16 (████████████████████████████████████████); *Gabriel Techs.*, 2010 WL 3718848, at *15 ("Gabriel's near insolvency demonstrates the importance of a bond to protect [d]efendants.").



C. **nCAP shifting assets is not just a hypothetical concern—the principals of nCAP have a history of using corporate structures to avoid liabilities.**

nCAP's principals—Mr. Sutera and Mr. Spencer—have a history of using the corporate form to avoid liabilities, as demonstrated by a number of examples. That history begins with ChamTech Enterprises—a predecessor company to the nCAP entities that was also controlled by Mr. Sutera—and its largest investor, Tom Katis. Although Mr. Katis loaned ChamTech Enterprises $1.3 million in 2011, neither Mr. Sutera nor ChamTech Enterprises repaid Mr. Katis. Instead, Mr. Katis was forced to sue ChamTech Enterprises and eventually—in 2015—was awarded a judgment of over $1.6 million in damages and interest. *See Katis v. Chamtech Enters., Inc.*, No. 2:13-cv-00496, Dkt. 38 (D. Utah Jan. 12, 2015). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Ex. R, Katis Dep. Tr. at 56:14-61:9 ████████████████████████████████████████████████████████████████████████████████). ████████. Ex. O, Sutera Dep. Tr. at 38:18-39:3 (████████████████████████

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Mr. Katis is still trying to collect on his judgment. *See Katis v. nCAP Holdings, LLC*, No. 2:19-cv-00556, Dkt. 1 (D. Utah 2019) (collection action).

And Mr. Katis was not the only example. Kristin Vazquez, an investor and former officer in nCAP's predecessor, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. S, Vazquez Dep. Tr. at 367:23-368:1. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See id.* at 284:3-293:18, 367:23-369:13. Similarly, another investor, Preventative Energy Solutions, sued Mr. Sutera, Mr. Spencer, and several other nCAP entities for fraud based on a failure to repay (which Mr. Sutera admits) a $500,000 advance despite their failure to deliver products. *See Preventative Energy Solutions, LLC v. nCAP Ventures 5, et al.*, No. 2:16-cv-809, Dkt. 1 (D. Utah July 19, 2016); Ex. T, Sutera Dep. Tr. (*Preventative Energy*) at 226:7-10.

### III. A Cost Bond Will Not Prejudice Plaintiffs.

Requiring nCAP to post a bond for Apple's costs will not prejudice nCAP because, at least at present, nCAP can afford to post such a bond. *Cf. Gay*, 682 F.3d at 594-95 (requiring courts to "consider a party's current ability to afford a bond"). nCAP has already budgeted funds for this litigation—more than $500,000—that are more than sufficient to cover a bond for Apple's costs.[4] *See* Ex. T, Sutera Dep. Tr. (*Preventative Energy*) at 252:1-4.

---

[4] Apple relies upon deposition testimony from another litigation because—despite Apple's repeated requests—Plaintiffs have not produced their financial records in this litigation, and their refusal to do so precludes a more detailed analysis of Plaintiffs' financial condition.

## CONCLUSION

Apple respectfully requests that the Court require nCAP to post a bond sufficient to cover the costs that Apple may recover by statute upon prevailing over nCAP's claims.

Dated: November 1, 2019

Respectfully submitted,

*/s/ Brent O. Hatch*
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Lara Swensen

DESMARAIS LLP
John M. Desmarais (*admitted pro hac vice*)
Ameet A. Modi (*admitted pro hac vice*)
Peter C. Magic (*admitted pro hac vice*)
Jeffrey S. Seddon, II (*admitted pro hac vice*)
William D. Findlay (*admitted pro hac vice*)
Priyanka R. Dev (*admitted pro hac vice*)
Karl I. Mullen (*admitted pro hac vice*)
Carson Olsheski (*admitted pro hac vice*)

*Attorneys for Defendant Apple Inc.*